**THE UNIVIS LENS COMPANY, Plaintiff-Appellee, v. UNITED ELECTRICAL WORKERS OF AMERICA etc. et, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 2011.  Decided June 8, 1949.

Smith, Schnacke & Compton, Dayton, for plaintiff-appellee.
Eugene A. Mayl, Thomas B. Talbot, Dayton, for trial judge.
Davis, Davis & Handelman, Cleveland, John H. Ober, Dayton, for defendants-appellants.

**OPINION**

By THE COURT:

This is a law appeal from a judgment of the Court of Common Pleas for Montgomery County entered on August 3, 1948, finding the defendant-appellant, Louis Kaplan, guilty of direct contempt of court.

The record discloses that Kaplan and four others, on August 2, 1948, had been found guilty of contempt a second time for violation of the court's injunction; that the court announced that it would finally dispose of the matter at 10:00 o'clock on the following morning; that these five parties had been attached under order of the court and were in the custody of the sheriff. At the adjournment of court on August 2, and upon the express promise of this defendant and the other four to appear in court at 10 o'clock on the following morning, the court permitted them to go to their homes rather than remain in jail over the night. On the following morning all of the defendants appeared as promised with the exception of Kaplan, the defendant-appellant. After waiting for his arrival for sometime the court ordered the sheriff to produce him. At 11:30 A. M. Kaplan voluntarily appeared in court. The court thereupon demanded an explanation and Mr. Davis, counsel for the defendant, then made the statement to the effect that the defendant had personal injuries which kept him awake most of the night and that as a result he had overslept and had not intended to violate the court's order. The court then found the defendant guilty of contempt and pronounced sentence. The defendant then apologized to the court for his indiscretion and made a further explanation which was practically the same as that made by his counsel. The court then suspended five days of the fifteen day jail sentence, which had been imposed, stating that he did not think that the violation of the court's order was intentional.

The first assignment of error is that the finding of the court is contrary to law, that contemptuous intent is a necessary element of the offense which the court found not to exist. Whether or not intent is a necessary element, it seems, is dependent upon the nature of the act complained of. If it was committed in the presence of the court, or so near the court or judge as to obstruct the administration of justice, the proceeding would be a summary one under §12136 GC. Under this section we are of the opinion that the intent is not a necessary element. On the other hand, if the

act comes under any of the classifications set forth in §12137 GC it seems that a different rule applies. In **9 O. Jur.** at page **14,** it is said:

"Acts committed in the presence of the court, particularly, are assumed to have been done with intent to show some disrespect. Hence in a proceeding under paragraph **12136 GC,** which is declaratory of the common law, it is not necessary to aver or prove intent."

The same principle is announced in Steube v. The State of Ohio, 3 O. C. C. at page 387:

"It is claimed on his behalf that he did not intend to obstruct the administration of justice by his assault upon Mr. Huling, and that the evidence fails to show any such intention. Treating this as a proceeding under **§5639 GC,** (now **§12136 GC**) which in our judgment is but declaratory of the common law, it is not necessary to aver or prove intent. Whoever by misconduct obstructs the administration of justice does so at his peril, and is guilty of contempt."

In 12 Am. Jur. 439, it is said:

"The oath of a contemner is no longer a bar to a prosecution for contempt. Under the common law rule, a denial of the facts upon which contempt proceedings are based is absolutely conclusive upon the court, and no evidence can be received to contradict it. The rule, however, never obtained in courts of equity. In such courts the answer of the accused may be contradicted by other evidence. The only legitimate effect of a subsequent denial of intention to insult the court, if such denial is sincere and bona fide, is to mitigate the punishment."

A recent decision of the Supreme Court of the United States is that of Fisher v. Pace, S. Ct. L. Ed. Advance Opinions, Vol. 93, No. 8, page 438, wherein we quote Justice Reed:

"Historically and rationally the inherent power of courts to punish contempts in the face of the court without further proof of facts and without aid of jury is not open to question. This attribute of courts is essential to preserve their authority and to prevent the administration of justice from falling into disrepute. Such summary conviction and punishment accords due process of law."

In the footnote to the Fisher case, supra, reference is made to Ex parte Terry, 128 U. S. 289:

"We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citiizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."

It is further urged by appelllant that the court erred 'in finding that a direct contempt was committed by the defendant; that if any such an act was committed it would have been under §12137 GC. It is well settled, not only by statutory law but also by judicial recognition of the inherent power of the courts to orderly administer justice, that a contempt in the presence of the court or so near thereto as to obstruct the administration of justice, may be punished summarily. **Sec. 12136 GC.** But entirely apart from the statutory authorization, the Supreme Court of Ohio has held that the courts have the inherent power to punish summarily for contempts, such power being inherent and necessary to exercise judicial functions, and that a statute cannot abridge or limit this inherent power. **Hale v. State, 55 Oh St 210; State v. Albin, 118 Oh St 527.** Such statutory powers are merely cumulative and in addition to the inherent powers of the court in such matters.

In direct contempt cases punishment may be adjudged informally and at once, without the filing of charges, the issuance of process or the taking of evidence. **In Matter of Lands, 146 Oh St 589, at p. 595;** In re Hannberger, 19 C. C. 651. The above section of the Code, authorizing a summary punishment, has been applied by the courts to various acts which delayed and interfered with trials, or otherwise obstructed the administration of justice, even though not in the court room in the physical presence of the court. The Court of Appeals

of Crawford County, in **Beach v. Beach, 79 Oh Ap 397, at page 404,** very recently said:

"When they speak of 'in the presence of the court', the courts have universally held that it is more than the idea of physical propinquity.

Neither place nor distance from the court determines whether the act complained of is done constructively in the presence of the court. However, if the act is of such character and is done under such circumstances that naturally its effect would be felt in the actual administration of justice, then the act is as much done in the court's presence as if the person doing the act were actually in the court's presence.

Likewise it has been held to be a contempt, which may be punished summarily, for a party being tried for contempt to fail to promptly appear at the appointed time following a court adjournment. In re Hannberger, 19 C. C. 651. A summary proceeding has been used to punish as a contempt an assault made upon the prosecuting attorney several blocks away from the court house, during an adjournment of court, which resulted in a delay of the trial. State v. Steube, 3 C. C. 383. See, also, State ex rel. v. Shay, 30 N. P. N. S. 657.

We are therefore of the opinion that the trial court properly found that the conduct of the defendant was a direct contempt of the court. We find no error in the record and the judgment is affirmed.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.