[Cite as *Wamack v. Wilson*, 2025-Ohio-1163.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JESSE WAMACK | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. Andrew J. King, J. |
| Plaintiff-Appellee | : | Hon. David M. Gormley, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2024-0095 |
| REBECCA WILSON,ET AL | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

and

TERRANCE J. KENNEALLY, ESQ.


CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court
                             of Common Pleas, Case No. CC-2024-
                             0028

JUDGMENT:                     Reversed and Remanded


DATE OF JUDGMENT ENTRY:       March 31, 2025

APPEARANCES:

For Terrence Kenneally            For Defendant-Appellee

PAUL W. FLOWERS
LOUIS E. GRUBE
KENDRA DAVITT
Terminal Tower, 40th Floor
50 Public Square
Cleveland, OH 44113

*King, J.,*

**{¶1}** Appellant Terrence J. Kenneally, Esq. [Kenneally] appeals from the July 25, 2024, Journal Entry of the Muskingum County Court of Common Pleas finding him in contempt for failing to attend an in-chambers status conference and fining him $1,000.00.

*Facts and Procedural History*

**{¶2}** Kenneally represented the alleged tortfeasor, Rebecca Wilson in a personal injury action. *See*, *Notice of Counsel,* filed February 16, 2024. [Docket Entry No. 8]; *Answer of Defendant Rebecca Wilson,* filed February 16, 2024. [Docket Entry No. 9]. Wilson's insurance carrier was represented by different counsel. *See*, *Answer of Defendant Geico*, filed February 15, 2024. [Docket Entry No. 7].

**{¶3}** On April 5, 2024, the trial judge filed the following entry,

This matter is scheduled for a status conference on **June 17, 2024, at 10:30 a.m. Said status conference will be held in chambers.**

**IT IS SO ORDERED.**

Emphasis in original. [Docket Entry No. 16]. The Entry was sent by Regular U.S. Mail on April 5, 2024. *Id.*

**{¶4}** On June 5, 2024, plaintiff's counsel filed a motion for a continuance of the status conference due to medical reasons. [Docket Entry No. 17]. By Journal Entry filed June 11, 2024, the trial judge granted plaintiff's motion for a continuance and rescheduled the status conference for June 20, 2024, at 11:00 a.m. [Docket Entry No. 18]. The entry contained the following provision, "**Said conference will be held in chambers.**" Emphasis in original. The proof of service certifies that the Entry was mailed on June 11, 2024. *Id.*

**{¶5}** On June 24, 2024, the trial judge noted that Kenneally failed to appear for the in-chambers status conference scheduled for June 20, 2024, at 11:00 a.m. *See, Judgment Entry*, filed June 24, 2024. [Docket Entry No. 19]. The judge scheduled a "**Show Cause Hearing on July 15, 2024, at 1:00 p.m.** to show cause why counsel should not be found in Contempt of Court." (Emphasis in original).

**{¶6}** Kenneally appeared on July 15, 2024. He acknowledged that he was in court that day for a show cause hearing on his failure to attend the in-chambers status conference set for June 20, 2024. T. at 3. Kenneally admitted that he did not appear for the in-chambers status conference. *Id.* The judge then inquired of Kenneally, "Why should the Court not find you in contempt for that?" *Id.* Kenneally told the judge that almost all courts in the state "are allowing attorneys to attend by phone for initial status conferences…" T. at 3-4. Kenneally told the judge that he attempted to call the court on June 16, 2024; however, he did not realize the court was closed that day for a federal holiday. *Id.* at 4. Kenneally continued, "And so that morning, because of the distance I had to travel, which is two and a half hours each way, I thought I would call, be present by phone, and - - handle it in that fashion." *Id.* The judge then asked, "Why didn't you call the week before to see if that was okay?" To which Kenneally replied, "Well, I don't know why I didn't. I don't have an answer to that. I don't have an answer…" *Id.* Kenneally continued, "I just explained my reasoning. If it was faulty, it was faulty. That was my reasoning. It certainly wasn't to show any disrespect to you." T. at 6. Kenneally agreed that the entry setting the status conference stated in bold print that the status conference would be held in chambers. *Id.*

**{¶7}** The judge asked the bailiff on the record how many status conferences the court conducts by phone. T. at 7. The bailiff responded, "Very few. Maybe one a year. That's under special circumstances." T. at 7. After a short recess, the judge asked if Kenneally had anything else, to which Kenneally added, "I don't have any excuses other than the fact I thought because it was a status conference I could do it by phone. But obviously, I'm here, and I was wrong." T. at 8.

**{¶8}** The judge found Kenneally in "direct contempt" and imposed a fine of $1,000.00. T. at 9; *Journal Entry,* filed July 25, 2024.

### Assignments of Error

**{¶9}** Kenneally raises two Assignments of Error,

**{¶10}** "I. THE TRIAL COURT'S IMPROPERLY CONDUCTED CONTEMPT HEARING RESTED ON INSUFFICIENT EVIDENCE AND VIOLATED ATTORNEY KENNEALLY'S CONSTITUTIONAL RIGHTS.

**{¶11}** "II. THE COURT'S CONTEMPT SANCTION VIOLATES PUBLIC POLICY."

### I.

**{¶12}** Contempt is defined in general terms as disobedience of a court order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001). "'It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *Denovchek v. Trumbull Cty. Bd. of Commrs.* 36 Ohio St.3d 14, 15 (1988) *quoting Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus.

**Ohio Courts Have Both Inherent Authority, and Statutory Authority to Punish for Contempt**

{¶13}  It has long been established in Ohio that courts have inherent authority to exercise their contempt power.  *Hale v. State*, 55 Ohio St. 210 (1896).  The inherent power of a court to punish for contempt of court may not be limited by legislative authority, nor does such power depend upon express constitutional grant. *State v. Local Union 5760, United Steelworkers of America*, 172 Ohio St. 75 (1961).

{¶14}  The Legislature has also provided courts with statutory authority to punish for contempt. R.C. 2705.02, Acts in Contempt of Court, defines Contempt in part as,

(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions…

{¶15}  A violation of R.C. 2705.02 is indirect contempt. *United Steelworkers of America*, 172 Ohio St. at 79. The penalties assessed for violations of the indirect contempt statute are set forth in R.C.  2705.05. *Id.*

{¶16}  A court may punish disobedience of its orders pursuant to both R.C. 2705.02(A) and its inherent power to enforce its authority. *Zakany v. Zakany*, 9 Ohio St.3d 192 (1984), syllabus; *State v. Yambrisak*, 2011-Ohio-5373, ¶ 12 (5th Dist.).

**Direct vs. Indirect Contempt**

{¶17}  Contempt may be either direct or indirect. *See, In the Matter of Lands*, 146 Ohio St. 589, 595 (1946); *In re Lodico*, 2005-Ohio-172, ¶ 35 (5th Dist.).  Indirect contempt occurs when the contemnor's actions occur outside the presence of the court. *Lands*, 146

Ohio St. at 595; *City of Cincinnati v. Dist. Council 51*, 35 Ohio St.2d 197, 202 (1973). Whereas direct contempt is an act of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice. *In re McGinty,* 30 Ohio App.3d 219, 223 (8th Dist. 1986) (citation omitted).

{¶18} In direct contempt proceedings, courts have the inherent power to summarily punish a contemnor. *Zakany v. Zakany*, 9 Ohio St.3d 192 (1984), syllabus. To "summarily" punish means the court is not required to accord the person the usual procedural rights of due process, such as the filing of process or the taking of evidence. *Sacher v. United States*, 343 U.S. 1, 9 (1952); *Pounders v. Watson*, 521 U.S. 982, 987-988 (1997), *citing Cooke v. United States*, 267 U.S. 517, 534 (1925); R.C. 2705.01.

{¶19} In cases of indirect contempt, the absence of an imminent threat necessitates a trial with due process guarantees. *State, ex rel. Seventh Urban Inc. v. McFaul,* 5 Ohio St.3d 120, 122 (1983); *In re: Disqualification of Ruehlman*, 2024-Ohio-1306, ¶ 37; *Lodico,* ¶ 46; *Basore v. Basore*, 2001-Ohio-7054 (5th Dist.); R.C. 2705.02; R.C. 2705.03.

### Criminal vs. Civil Contempt

{¶20} In addition, contempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253-254 (1980); *In re Purola,* 73 Ohio App.3d 306, 311 (3d Dist. 1991).

{¶21} The pertinent test in distinguishing criminal and civil contempt is as follows: "what does the court primarily seek to accomplish by imposing sentence?" *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966); *State v. Yambrisak*, 2011-Ohio-5373, ¶ 15 (5th Dist.). Therefore, to determine if the sanction in the instant case was criminal or civil in nature,

it is necessary to determine the purpose behind the sanction: was it to coerce Kenneally to obey the journal entry, or was it to punish him for a past violation? *See, Brown v. Executive 200, Inc.*, 64 Ohio St.2d at 252.

{¶22} In determining the nature of a contempt, a reviewing court is not bound to the trial court's characterization of the contempt as civil or criminal but must independently ascertain the nature of the contempt. *ConTex, Inc. v. Consolidated Technologies, Inc.*, 40 Ohio App.3d 94 (1st Dist.1988); *In re: Guardianship of Finan*, 2014-Ohio-3572, ¶ 13 (5th Dist.).

### Burden of Proof and Procedural Requirements

{¶23} The classification of contempt as either criminal or civil takes on added importance because each requires a different burden of proof.

{¶24} The standard of proof required in a criminal contempt proceeding is proof of guilt beyond a reasonable doubt. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d at syllabus; *Finan*, 2014-Ohio-3572, ¶ 15.

{¶25} In cases of indirect criminal contempt, intent to violate the order or defy the court is an essential element. *In re Purola*, 73 Ohio App.3d 306 (3d Dist.1991). To ascertain an alleged contemnor's intent, the court must consider the totality of the circumstances. *Id.* An appellate court, when reviewing a trial court's finding of indirect criminal contempt, must determine whether sufficient evidence existed for the trial court to reasonably conclude beyond a reasonable doubt that the contemnor purposely, willfully, or intentionally violated a prior court order. *See Midland Steel Prods. Co. v. U.A.W. Local 486,* 61 Ohio St.3d 121 (1991). Simply failing to appear at a hearing alone does not prove intent to commit contemptuous conduct. *City of East Cleveland v. Reed*,

54 Ohio App.2d 147 (1977). Further, an erroneous assumption does not rise to the level of intentional disobedience. *City of Cleveland v. Ramsey*, 56 Ohio App.3d 108 (8th Dist.1988).

{¶26} The standard of proof in a civil contempt proceeding is clear and convincing evidence. *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *Brown v. Executive 200, Inc.,* 64 Ohio St.2d at 253; *Polen v. Heaston*, 2016-Ohio-7508, ¶12 (5th Dist.). "Clear and convincing evidence" is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### Application of the Law to the Facts

{¶27} In the case at bar, Kenneally failed to appear in person for a status conference as required by the trial judge's June 11, 2024 journal entry. Kenneally's acts occurred outside or beyond the presence of the court; therefore, his actions must be characterized as indirect contempt. *Finan,* 2014-Ohio-3572, ¶ 24; *Basore v. Basore*, 2001-Ohio-7054 (5th Dist.) ("[C]ourts have consistently held that the arriving late to a hearing or not appearing at all constitutes an indirect contempt of the court."); *In re Guardianship of Myers,* 2003-Ohio-5308, ¶¶ 29 - 30 (7th Dist.); *City of Cleveland v. Ramsey*, 56 Ohio App. 3d 108 (8th Dist. 1988); *State v. Moody*, 116 Ohio App.3d 176, 181 (12th Dist. 1996). *See also Weiland v. Indus. Comm. of Ohio,* 166 Ohio St. 62, 66 (1956) (when an attorney arrives late his conduct is both direct and indirect, i.e., it occurs both in front of the court and outside of the court's presence, which requires the court to give the attorney an opportunity to explain his actions).

**{¶28}** Kenneally was fined $1000.00 for his failure to obey the court's order to appear in-person for the status conference. The purpose of the fine was to vindicate the authority of the court, and to punish Kenneally for his past violation. Thus, this contempt was criminal in nature. *See, Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253-254; *Finan,* 2014-Ohio-3572, ¶ 16; *In re Purola*, 73 Ohio App.3d 306, 311 (3d Dist. 1991).

**{¶29}** As previously mentioned, this was an indirect, criminal contempt. Therefore, "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). Accordingly, Kenneally was entitled to all the procedural due process protections afforded in criminal proceedings, including the right to notice of the charges, the right to defend oneself and be heard, the right to counsel, and the right that there be proof beyond a reasonable doubt that he purposely, willfully, or intentionally violated the court order. *See International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826 (1994); *Cooke v. United States*, 267 U.S. 517, 537 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911) (privilege against self-incrimination, right to proof beyond a reasonable doubt). With respect to the right to counsel, a waiver of the right to counsel will not be presumed from a silent record. *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). The record must show that an accused was offered counsel but intelligently and understandingly rejected the offer. *Finan,* 2014-Ohio-3572, ¶ 21.

**{¶30}** We find that, in this case, the record establishes that there was no prosecutor or presentation of evidence. Further, Kenneally was not advised of his right of counsel, nor was he given an opportunity to present a defense.

**{¶31}** It is specifically provided in R.C. 2705.05 that it is for the court to decide the question of guilt or innocence in a contempt proceeding. The appointment of another judge to hear the evidence is warranted where the alleged contempt takes the form of personal insult or vilification of the judge, so that there would exist the possibility of bias should the victim of such abuse pass judgment on the evidence. *State v. Weiner,* 37 Ohio St.2d 11,13 (1974) citing *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971) and R.C. 2705.05. Additionally, in *State v. Mulligan,* the court observed,

> Although it is perhaps preferable that another judge always decide the merits of a charge of indirect contempt made by a judge, there is nothing wrong with the charging judge deciding the merits of the contempt charge, provided that he or she can be an impartial arbiter. *See State v. Weiner* (1974), 37 Ohio St.2d 11, 305 N.E.2d 794.

> Facts suggesting that a judge may have become so personally embroiled that his perspective may be affected include complaining to the attorney's fellow professional colleagues and clients about the events leading up to the contempt proceedings. *Betsworth v. Worker's Comp. Appeals Bd.* (1994), 26 Cal.App.4th 586, 31 Cal.Rptr.2d 664 (contempt judgment based upon attorney's personal disrespect towards worker's compensation referee annulled because referee became so personally

embroiled in the incident that her perspective was affected, and in the process denying defendant due process of law).

2003-Ohio-782, ¶ 46-47 (2d Dist.); *See also, In re Karasek*, 119 Ohio App.3d 615, 623-624 (2d Dist. 1997) ("In this case, the contempt proceedings were not the result of personal attacks upon the trial court, but were instead founded upon Karasek's apparent failure to have complied with court orders."); *State v. Cusick*, 1994 WL 117116, * 4 (9th Dist. Apr. 6, 1994) ("Here, however, the alleged contempt did not involve a personal insult or vilification of the judge. Mr. Mancino has not pointed to anything in the record to demonstrate that Judge Campbell conducted the proceedings in a bias or slanted manner.").

**{¶32}** The conduct in this case did not involve personal insult toward the trial judge. We have examined the record, and it does not appear that Judge Cottrill became embroiled in a running dispute with Kenneally, or that Kenneally was in any way disrespectful toward the judge.

**{¶33}** Kenneally's First Assignment of Error is sustained. The order of contempt is reversed, the award of sanctions is vacated, and the matter is remanded to the trial court for further proceedings consistent with this decision.

II.

**{¶34}** Considering our disposition of Kenneally's First Assignment of Error, we overrule Kenneally's public policy argument raised in his Second Assignment of Error as premature.

{¶35} The judgment of the Muskingum County Court of Common Pleas is reversed, and the matter is remanded to the trial court for further proceedings consistent with this decision.

By King, J.,

Hoffman, P.J., and

Gormley, J., concur